IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12-cv-02615-MSK-MEH

AARON J. DOUGLAS,

    Plaintiff,

v.

CITY OF FORT COLLINS,

    Defendant.

---

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

---

**Michael E. Hegarty, United States Magistrate Judge.**

Before the Court is Defendant's "Motion to Dismiss Plaintiff's Second Complaint, Dated April 29, 2013, from the City of Fort Collins" [filed **May 13, 2013**; docket #19]. Pursuant to 28 U.S.C. § 636(b)(1)(B) and D.C. Colo. L.Civ.R 72.1.C, the Motion is referred to this Court for recommendation. (Dockets #25.) The matter is fully briefed, and the Court has determined that oral argument would not materially assist its adjudication of the Motion. For the reasons set forth below, the Court **RECOMMENDS** Defendant's Motion be **GRANTED** as stated herein.[1]

---

[1] Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *In re Garcia*, 347 F. App'x 381, 382-83 (10th Cir. 2009).

**BACKGROUND**

Plaintiff initiated this lawsuit *pro se* on October 2, 2012, pursuant to 42 U.S.C. § 1983. (Docket #1.) The Court struck his initial Complaint on April 23, 2013, for failure to comply with various federal and local rules. (Docket #17.) In so doing, the Court observed that Plaintiff's Complaint contained no recitation of legal authority, no identified cause of action, and no request for damages. Thus, the Court authorized Plaintiff to file an amended pleading on or before May 3, 2013, correcting the aforementioned deficiencies. In accordance with the Court's instructions, Plaintiff filed his Amended Complaint on April 30, 2013. (Docket #18.)

**I.    Factual Allegations[2]**

Plaintiff's Amended Complaint arises from various encounters Plaintiff has had with officers of the Fort Collins Police Department ("FCPD"). (Docket #31 at 3.) Generally, Plaintiff asserts certain officers of the FCPD violated his Fourteenth Amendment right to access to public venues, including streets of the City of Fort Collins and the Colorado State University campus, by targeting and intimidating him on various occasions. (Docket #18 at 3.) As an African-American male, Plaintiff suggests police targeted him unfairly because of his race. Plaintiff's Amended Complaint categorizes his encounters with police as a three separate cause of action; thus the Court recounts them in the sequence presented.

   A.    Claim One

Plaintiff's First Claim for Relief asserts that on February 1, 2012, a white middle-aged

---

[2]The following are factual allegations (as opposed to legal conclusions, bare assertions or merely conclusory allegations) made by the Plaintiff (or construed liberally) in Plaintiff's Amended Complaint [docket #19], which are taken as true for analysis under Fed. R. Civ. P. 12(b)(6) pursuant to *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court must limit its review to the four corners of the Amended Complaint and, thus, will not consider the assertions contained in Plaintiff's response briefs as though they were facts. *See Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001).

female FCPD officer stopped Plaintiff at the community mailbox on Gunnison Drive in Fort Collins, Colorado and questioned him regarding his vehicle. (Docket #18 at 9.) As Plaintiff recalls, his vehicle was parked adjacent to the mailbox with two wheels on the sidewalk. (*Id*.) The officer informed Plaintiff he was in violation of a city ordinance prohibiting parking on the sidewalk. (*Id*.) Plaintiff denied knowledge of such an ordinance. (*Id*.) In the three-to-five minute exchange that ensued, the officer asked if Plaintiff had been drinking and commented that his behavior was "extremely odd." (*Id*.) In closing, the officer warned Plaintiff that she would issue him a parking ticket if she observed him parking in the same manner in the future. (*Id*.)

Plaintiff cites two facts which he believes "establish the capricious nature of the incident." First, Plaintiff notes that a white male officer of the FCPD resided on Gunnison Street near Gunnison Drive where Plaintiff parked his vehicle at the community mailbox. (*Id.* at 10.) On at least two occasions, the officer drove by Plaintiff's vehicle while it was parked at the community mailbox with two wheels on the curb; however, the officer never slowed down or stopped to report a parking violation. (*Id*.) Second, Plaintiff observed a large trailer van parked with one or more of its wheels or legs on the sidewalk within plain site of the corner of Swallow Road and Worthington Avenue. (*Id*.) Although the van remained parked at that location for 48 hours and impeded pedestrian traffic, Plaintiff did not see a citation attached to the van. (*Id*.)

B.   Claim Two

Plaintiff's Second Claim for Relief involves a series of incidents in which an FCPD officer allegedly followed Plaintiff's vehicle for a several blocks. One of the incidents occurred at the corner of Swallow Road and Worthington Avenue "within 24-and 36-months (sic) of the filing of [Plaintiff's] civil complaint." (*Id*. at 12.) As Plaintiff approached the corner along Worthington Avenue, an FCPD officer driving a compact police vehicle on the east side of the road abruptly

turned 180 degrees and proceeded to follow Plaintiff's vehicle as a Plaintiff turned left onto Swallow Road and then right onto Shields Street. (*Id.*) Plaintiff claims he was able to "evade" the officer by turning off Shields Street onto Drake Avenue and off Drake Avenue onto another street. (*Id.*) The same officer allegedly repeated the conduct "at least twice" at the same corner within 12 months of the first incident. Plaintiff alleges he was frightened by the initial incident, and that the combined incidents constitute "discriminatory harassment" over of a period of more than 20 years. (*Id.*)

### C.    Claim Three

Plaintiff's Third Claim for Relief allegedly arose on February 13, 1996, and has also occurred roughly 7-10 times in the past.[3] (*Id.* at 14.) As Plaintiff was commuting to work, he noticed an FCPD officer driving toward Overland Trail. (*Id.*) The officer stopped his vehicle, made an "entrance" onto Overland Trail, and headed south toward Taft Hill immediately thereafter. (*Id.*) The officer began to follow Plaintiff's vehicle; however "in a slight vriation (sic) he might have immediately proceeded Plaintiff in his car." (*Id.*) "By the laws of chance, Plaintiff would see the officer enter Overland a block or two before Plaintiff's car; or immediately enter Overland heading north, which would take him in the opposite direction." (*Id.*) According to Plaintiff, "[t]hese events have never transpire (sic) in 7-to-10 encounters," as the officer is always close enough to Plaintiff's vehicle for him to perceive that Plaintiff, the driver, is a member of a minority group. (*Id.*) Plaintiff alleges that upon recognizing his minority status, "he places his vehicle in close contact with Plaintiff's car." (*Id.*)

The day after the February 13, 1996 incident, Plaintiff spoke with a Lt. West of the FCPD for approximately 20-30 minutes about his experience on Overland Trail. (*Id.* at 14-15.) Lt. West

---

[3]It is unclear from the Amended Complaint whether the additional 7-10 incidents occurred before or after February 13, 1996.

directed Plaintiff to call him regarding any future incidents. (*Id.* at 15.) Plaintiff then recorded the license plate of "the" police vehicle in question, and gave it to Lt. West. (*Id.*) (quotation marks in original). Lt. West verified that the license plate number belonged to a police officer and recognized that Plaintiff was providing accurate information. (*Id.*) Lt. West inquired as to whether Plaintiff wished to pursue a complaint against the officer; however, Plaintiff does not indicate whether he did so. (*Id.*) Several months later, Plaintiff learned that a Sgt. Gonzalez had replaced Lt. West as community liaison officer. (*Id.*) When Plaintiff attempted to renew his concerns with Sgt. Gonzalez, he told Plaintiff that "his charges and claims did not form the basis for a complaint or action against any FCPD officers." (*Id.*) Sgt. Gonzalez further advised Plaintiff that "[Plaintiff] was wise to get out of the way of any police officers acting in an official capacity" and that "it could be dangerous to write down the license plate numbers of any FCPD officers." (*Id.*)

## II.     Procedural History

In response to Plaintiff's Amended Complaint, Defendant filed the pending Motion to Dismiss on May 13, 2013. (Docket #19.) Defendant's Motion advances two categories of arguments: (1) Plaintiff's assertions fail to state a claim against Defendant upon which relief can be granted; and (2) to the extent Plaintiff seeks recovery for any events that occurred prior to October 2, 2010, such claims are barred by the statute of limitations.

Plaintiff filed his response to the Motion on May 22, 2013, along with a declaration containing additional information about the incidents described in his Amended Complaint.[4] (Dockets #20, 20-1.) Plaintiff contends that his claims are sufficient to go forward and are not otherwise barred by the statute of limitations. Considering Plaintiff's additional facts and

---

[4]Several of the facts Plaintiff characterizes as "new" are found in his Amended Complaint. In this way, Plaintiff appears confused regarding the materials the Court will review in adjudicating Defendant's Motion to Dismiss. In the interest of clarity, the Court reiterates that its review, though liberal, is neither narrower nor broader than those facts asserted in the Amended Complaint.

5

arguments, Defendant's reply brief, filed June 6, 2013, maintains that dismissal is warranted because Plaintiff has failed to plausibly allege any violation of his constitutional rights.

## STANDARDS OF REVIEW

### I.   Dismissal Under Fed. R. Civ. P. 12(b)(1)

Rule 12(b)(1) empowers a court to dismiss a complaint for "lack of subject matter jurisdiction." Fed. R. Civ. P. 12(b)(1). Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case, but only a determination that the court lacks authority to adjudicate the matter. *See Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994) (recognizing federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so). A court lacking jurisdiction "must dismiss the cause *at any stage* of the proceeding in which it becomes apparent that jurisdiction is lacking." *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974) (emphasis in original). A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere conclusory allegations of jurisdiction." *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971). The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. *See Basso*, 495 F.2d at 909. Accordingly, Plaintiff in this case bears the burden of establishing that this Court has jurisdiction to hear his claims. Further, under a 12(b)(1) motion, "a court has 'wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts." *Stuart v. Colorado Interstate Gas Co.*, 271 F.3d 1221, 1225 (10th Cir. 2001) (quoting *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995)). In such an instance, "a court's reference to evidence outside the pleadings does not convert the motion into a Rule 56 motion." *Id.*

### II.   Dismissal under Fed. R. Civ. P. 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id. Twombly* requires a two-prong analysis. First, a court must identify "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Id.* at 678-80. Second, the Court must consider the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 680.

Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (quoting *Robbins v. Oklahoma,* 519 F.3d 1242, 1247 (10th Cir. 2008)). "The nature and specificity of the allegations required to state a plausible claim will vary based on context." *Kansas Penn Gaming, LLC v. Collins,* 656 F.3d 1210, 1215 (10th Cir. 2011). Thus, while the Rule 12(b)(6) standard does not require that a plaintiff establish a prima facie case in a complaint, the elements of each alleged cause of action may help to determine whether the plaintiff has set forth a plausible claim. *Khalik*, 671 F.3d at 1191.

### III. Dismissal of a *Pro Se* Plaintiff's Complaint

A federal court must construe a *pro se* plaintiff's "pleadings liberally, applying a less stringent standard than is applicable to pleadings filed by lawyers. [The] court, however, will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory

7

on plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (quotations and citations omitted). The Tenth Circuit interpreted this rule to mean, "if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, this interpretation is qualified in that it is not "the proper function of the district court to assume the role of advocate for the pro se litigant." *Id.*; *see also Peterson v. Shanks*, 149 F.3d 1140, 1143 (10th Cir. 1998) (citing *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989)). A dismissal "without affording the plaintiff notice or an opportunity to amend is proper only 'when it is patently obvious that plaintiff could not prevail on the facts alleged, and allowing him an opportunity to amend his complaint would be futile.'" *Curley v. Perry*, 246 F.3d 1278, 1281–82 (10th Cir. 2001) (quoting *Hall*, 935 F.2d at 1110 (additional quotation marks omitted)).

## ANALYSIS

As noted above, Defendant seeks dismissal under both Fed. R. Civ. P. 12(b)(1) and 12(b)(6). The Court will address the jurisdictional portion of the Motion before considering whether Plaintiff has alleged a plausible claim against Defendant.

### I. Statute of Limitations

Although Section 1983 does not establish its own statute of limitations, "the statute of limitations for Section 1983 actions brought in Colorado is two years from the time the cause of action accrued."[5] *Braxton v. Zavaras*, 614 F.3d 1156, 1160 (10th Cir. 2010) (quoting *Fogle v.*

---

[5] Plaintiff proposes the Court adopt a five-year limitations period under 42 U.S.C. § 14141. Because the plain language of the statute permits enforcement only by the attorney general, Plaintiff's reliance on its provisions in this private action is misplaced. *See Mahan v. Huber*, No. 09-cv-00098-PAB-BNB, 2010 WL 749815, at *6 (D. Colo. March 2, 2010) ("[42 U.S.C. § 14141]

8

*Pierson*, 435 F.3d 1252, 1258 (10th Cir. 2006)). Because Section 1983 suits assert a federal cause of action, federal law controls when the cause of action accrues. *See Baker v. Board of Regents of the State of Kansas,* 991 F.2d 628, 632 (10th Cir. 1993); *Newcomb v. Ingle,* 827 F.2d 675, 678 (10th Cir. 1987). "In general, under the federal discovery rule, claims accrue and '[t]he statute of limitations begins to run when the plaintiff knows or has reason to know of the existence and cause of the injury which is the basis of his action.'" *Alexander v. Oklahoma*, 382 F.3d 1206, 1215 (10th Cir. 2004) (quoting *Indus. Constructors Corp. v. United States Bureau of Reclamation*, 15 F.3d 963, 969 (10th Cir. 1994)).

Defendant argues that all claims arising prior to October 2, 2010, are barred by the applicable statute of limitations. In response, Plaintiff asks the Court to view Defendant's conduct as a "continuing violation" necessitating consideration of events that occurred as late as the mid-1990s. While the continuing violation doctrine functions as a viable exception to the statute of limitations in some cases, it is Plaintiff's burden to demonstrate the doctrine applies. *Fogle v. Slack*, 419 F. App'x 860, 864 (10th Cir. 2011).

Courts developed the continuing violation doctrine in the context of Title VII to permit plaintiffs to challenge incidents that occurred outside the statutory limitations period if such incidents "are sufficiently related and thereby constitute a continuing pattern of discrimination." *Id*. The Tenth Circuit has expressly declined to decide whether the doctrine applies in Section 1983 cases. *Id*. However, its extension to Section 1983 is irrelevant where each alleged instance of discrimination is discrete and involves different decision makers at different locations. *See id*. Under such circumstances, it "is inappropriate to aggregate all such decisions into one continuing violation for limitations purposes." *Id*. Such is the case here, where the incident categories

---

provides a right of action to the Attorney General; it does not provide a private right of action.").

identified in Plaintiff's Amended Complaint occurred in distinct blocks of time at different locations and involved different law enforcement officers. Thus, even if the Tenth Circuit recognized the continuing violation doctrine in Section 1983 actions, Plaintiff has not demonstrated that its application is warranted here. In its absence, the two-year limitations period operates to bar any claims Plaintiff asserts arising prior to October 2, 2010. The Court recommends such claims be dismissed pursuant to Fed R. Civ. P. 12(b)(1).

## II.     Failure to State a Claim

The Supreme Court recognizes that municipalities and other local government units are "persons" to whom Section 1983 applies. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 n. 55 (1978). Plaintiff alleges that Defendant violated his Fourteenth Amendment rights based upon the incidents described in his Amended Complaint. Defendant counters that Plaintiff has failed to plausibly allege a claim for municipal liability.

Local governments can be liable under Section 1983 "only for their *own* illegal acts." *Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011) (internal quotation and citations omitted) (emphasis in original). Hence, "[a] municipality may not be held liable under § 1983 solely because its employees inflicted injury on the plaintiff." *Hinton v. City of Elwood, Kan.*, 997 F.2d 744, 782 (10th Cir. 1993) (citing *Monell*, 436 U.S. at 692). Rather, to prove a Section 1983 claim against a municipality, a plaintiff must demonstrate (1) the existence of a municipal policy or custom, which (2) directly caused the injury alleged. *Id.* (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989)). A plaintiff "cannot state a claim for relief under § 1983 by pointing to isolated incidents." *Ketchum v. Denver Police Dept.*, 930 F.2d 33, 1991 WL 35212, at *1 (10th Cir. 1991) (citing *Monell*, 436 U.S. at 694).

In establishing the first requirement, a plaintiff may show a municipal policy or custom

in the form of any of the following:

> (1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions - and the basis for them - of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.

*Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010) (quoting *Brammer-Hoetler v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1189-90 (10th Cir. 2010)) (internal quotations omitted).

Plaintiff's Amended Complaint, even liberally construed, fails to identify any formal regulation or policy statement authorizing arbitrary or discriminatory enforcement of the laws. Similarly, Plaintiff does not allege that any of the officers with whom he interacted had final policymaking authority or that anyone with such authority ratified any violation of the law by those officers. There is likewise no mention of any failure to train or supervise on the part of Defendant. Thus, Plaintiff must plausibly allege that any constitutional injury he may have suffered occurred as a result of an informal custom.

"In order to establish a custom, the actions of the municipal employees must be continuing, persistent, and widespread." *Carney v. City and Cnty. of Denver*, 534 F.3d 1269, 1274 (10th Cir. 2008) (citations and internal quotations omitted). To prove a custom at this level, "plaintiffs most commonly offer evidence suggesting that similarly situated individuals were mistreated by the municipality in a similar way." *Id*. "Indeed, a failure to allege the existence of similar discrimination as to others seriously undermines [a claim] that [the municipality] maintained a custom of discriminatory [] practices." *Id*.

Plaintiff's Amended Complaint cites three categories of incidents involving Plaintiff's

11

interactions with various FCPD officers. Even if these incidents demonstrate continuing and persistent conduct by FCPD officers (and the Court makes no finding as to whether they do), Plaintiff has failed to plausibly demonstrate that they were widespread. Notably, Plaintiff does not allege, either with fact or assertion, that similarly situated members of the community were mistreated by the municipality in the same way, nor has he provided any other indication that the discrimination he believes he faced was a customary feature of FCPD's law enforcement. Of course, because Plaintiff has failed to allege an unconstitutional custom or practice, has likewise failed to plausibly allege the required "causal nexus" between any such custom and the incidents set forth in the Amended Complaint. *See Ketchum*, 1991 WL 35212 at *1. Therefore, the Court finds that he has failed to state a claim upon which relief can be granted. The Court recommends the District Court dismiss each cause of action pursuant to Fed. R. Civ. P. 12(b)(6), accordingly.

**III.    Leave to Amend**

Dismissal of a case under Fed. R. Civ. P. 12(b)(6) is a harsh remedy to be used cautiously so as to promote the liberal rules of pleading while protecting the interests of justice. *Cayman Exploration Corp. v. United Gas Pipe Line*, 873 F.2d 1357, 1359 (10th Cir. 1989). As such, in this jurisdiction, the Court typically does not dismiss a claim under Rule 12(b)(6) until the plaintiff has been provided notice and an opportunity to amend the complaint to cure the defective allegations. *See Bellmon*, 935 F.2d at 1109-10.

Here, the Court has already granted Plaintiff leave to amend in response to a fully-briefed motion to dismiss. Defendant's first motion to dismiss presented many of the same arguments at issue in the pending Motion, thereby providing Plaintiff with an opportunity to revise his claims accordingly. He has not done so in a way that states a claim, and the Court is not persuaded that further amendment would be curative. Consequently, the Court recommends that Plaintiff be denied

further opportunity to amend his pleadings to assert additional claims against Defendant.

## CONCLUSION

As set forth above, the Court believes that at least some of Plaintiff's claims are barred by the applicable statute of limitations. However, even those causes of action that are not barred fail to state a plausible claim for relief against Defendant. Accordingly, the Court RECOMMENDS Defendant's "Motion to Dismiss Plaintiff's Second Complaint, Dated April 29, 2013, from the City of Fort Collins" [filed May 13, 2013; docket #19] be **GRANTED**, and that Plaintiff's claims be dismissed without further opportunity to amend.

Dated and entered at Denver, Colorado, this 7th day of August, 2013.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge